**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRIS MOORE d/b/a MOORE'S HONEY FARM** | § | |
| **COX HONEY OF UTAH, LLC,** | § | |
| **BRETT ADEE d/b/a ADEE HONEY FARMS, and** | § | |
| **KELVIN ADEE d/b/a ADEE HONEY FARMS,** | § | |
| | § | |
| on behalf of themselves and all others similarly situated, | § | **CASE NO. 13 CV 2984** |
| | § | |
| **PLAINTIFFS** | § | |
| **vs.** | § | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| | § | |
| **HONEY HOLDING I, LTD. d/b/a/ HONEY SOLUTIONS,** | § | |
| **HHI MANAGEMENT, LLC,** | § | |
| **DOUGLAS A. MURPHY and** | § | |
| **URBAIN TRAN,** | § | |
| | § | |
| **DEFENDANTS** | § | |

Ben Barnow
Sharon A. Harris
Erich P. Schork
Blake A. Strautins
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Email: b.barnow@barnowlaw.com
Email: s.harris@barnowlaw.com
Email: e.schork@barnowlaw.com
Email: b.strautins@barnowlaw.com

Richard L. Coffman
**THE COFFMAN LAW FIRM**
505 Orleans St., Ste. 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Email: rcoffman@coffmanlawfirm.com

G. Robert Blakey
Professor of Law Emeritus*
Notre Dame Law School
*Noted for purpose of identification
7002 East San Miguel Avenue
Paradise Valley, AZ 85253
Telephone: (574) 514-8220
Email: G.R.Blakey.1@nd.edu

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

Nature of the Case ........................................................................................................... 1

Jurisdiction and Venue ................................................................................................... 4

Parties .............................................................................................................................. 5

Facts .............................................................................................................................. 10

    The Domestic Honey Industry ............................................................................ 10

    The Regulation of Goods Imported into the United States............................. 13

    Antidumping Order Imposed by the United States Department of Commerce on Chinese-Origin Honey...................................................................................... 15

    Defendants' Wrongful Acts .................................................................................. 17

Honey Solutions Executives' and HHI's Pattern of Unlawful Activity Under 18 U.S.C. § 1961, *et seq.*: Mail Fraud and/or Interstate and/or Foreign Wire Fraud ................... 22

Class Action Allegations ............................................................................................... 25

Claims for Relief/Causes of Action ............................................................................. 25

    Count One        Violation of 18 U.S.C. § 1962(c)................................ 28

    Count Two       Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(a) ......................................................... 30

    Count Three     Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c) ......................................................... 33

    Count Four       Negligent Misrepresentation ........................................... 34

    Count Five       Unjust Enrichment .......................................................... 34

Tolling of the Statutes of Limitation ........................................................................... 35

Respondeat Superior/Agency ....................................................................................... 37

Relief Requested............................................................................................................ 38

Prayer…........................................................................................................................ 39

Jury Demand.................................................................................................................. 40

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Chris Moore d/b/a Moore's Honey Farm, Cox Honey of Utah, LLC, Brett Adee d/b/a Adee Honey Farms and Kelvin Adee d/b/a Adee Honey Farms (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated ("Class Members"), bring this action against Defendants Honey Holding I, Ltd. d/b/a Honey Solutions, HHI Management, LLC, Douglas A. Murphy and Urbain Tran (collectively, "Defendants"), and respectfully allege as follows:

## NATURE OF THE CASE

1.      At all relevant times, Plaintiffs produced, packed and/or wholesaled honey (and continue to do so). At all relevant times, Defendants and their cohorts produced, purchased, processed, filtered, blended, packed, packaged, marketed, sold and/or distributed honey (and continue to do so).  Defendants also engaged in an unlawful scheme to defraud the United States Government ("Government"), Plaintiffs, and Class Members. Defendants' scheme was implemented by foisting on the Government and the domestic honey market illicit, low-cost Chinese honey as legitimate honey.  Defendants did it with the intent to defraud the Government and defraud and crowd out legitimate honey producers to Defendants' financial benefit and the financial detriment of Plaintiffs and Class Members.

2.      Plaintiffs, on behalf of themselves and Class Members, bring this action as a national class action under Title XI ("RICO") of Public Law 91-452, 84 Stat. 922 (1970) (as codified at 18 U.S.C. §§ 1961–1968, as amended) and the common law against Defendants for their fraud, negligent misrepresentation, conspiracy, and clandestine and wrongful importation and dumping of Chinese honey (and possibly honey from other unlawful source countries) on the United States honey market without paying the corresponding antidumping duties, by reason of

1

which, Defendants substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United States by Plaintiffs and Class Members, damaged the Government in its governmental functions, and damaged Plaintiffs and Class Members in their businesses and/or property.

3.      Defendants HHI Management, LLC, Douglas A. Murphy and Urbain Tran conducted and participated, directly and indirectly, in the affairs of Honey Holding I, Ltd. d/b/a Honey Solutions ("Honey Solutions") (the RICO enterprise) through a pattern of unlawful activity—to wit, they engaged in repetitious and systematic mail fraud and/or interstate and/or foreign wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 by using or causing the use the United States Postal Service ("USPS"), private or commercial interstate carriers and/or the wires in interstate and foreign commerce to repeatedly, systematically and fraudulently (i) cause honey originating in China (and possibly other unlawful source countries), including honey containing adulterated antibiotics and other unlawful contaminates, to be illegally transshipped (*i.e.*, "laundered") through intermediate countries (including, *inter alia*, Cambodia, Malaysia, Mongolia, Russian, and Vietnam) to the United States, (ii) defraud Government import authorities by misrepresenting that the Chinese-origin honey (a) originated in countries other than China and (b) was not honey, but other products, (including sugars and syrups) to avoid paying legally mandated antidumping duties, and (iii) dump, market, sell and distribute the illegally imported and fraudulently declared Chinese-origin honey to businesses and persons throughout the United States. Defendants' wrongful acts, as they well knew and intended, without legal justification, unlawfully undercut their legitimate competition and substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United

States by Plaintiffs and Class Members—to Defendants' financial benefit and Plaintiffs' and Class Members' financial detriment.

4.      On February 12, 2013, Honey Solutions entered into a Deferred Prosecution Agreement with the United States Attorney for the Northern District of Illinois for committing fraud on Government import authorities and engaging in the wrongful conduct constituting a portion of the actions made the basis of this action. *See* Exhibit A.  Honey Solutions' unlawful actions "caused losses to the United States of no less than $33,403,125" in the form of unpaid antidumping duties between 2007 and June 2011.  *See id.* (Factual Statement at ¶9).  As part of the Deferred Prosecution Agreement, Honey Solutions paid a $1 million fine to the Government. That said, Plaintiffs do not seek to represent the Government in this action.

5.      At all relevant times throughout the Class Period, by their unlawful acts, Defendants (i) received substantial income derived, directly or indirectly, from a pattern of unlawful activity that was used or invested, directly or indirectly, to acquire an interest in, establish, maintain, advance and/or operate a RICO enterprise (*i.e*., Honey Solutions) that engaged in, or the activities of which affect, interstate and/or foreign commerce (in violation of 18 U.S.C. § 1962(a)), (ii) conducted or participated in the affairs of Honey Solutions (the RICO enterprise) (in violation of 18 U.S.C. § 1962(c)), and/or (iii) conspired to violate 18 U.S.C. § 1962(a) and (c) (in violation of 18 U.S.C. §1962(d)).

6.      Defendants agreed to commit (and committed) these substantive RICO offenses through the RICO enterprise (*i.e.,* Honey Solutions) by engaging in multiple predicate acts of mail fraud and/or interstate and/or foreign wire fraud—all the while knowing of, and intentionally agreeing to, the overall objective of the scheme to defraud and related matters as stated herein—to wit, unlawfully capturing the United States honey market, wrongfully

undercutting their competition, driving their competitors out of business, and illicitly capturing for themselves the earnings and profits that otherwise would have been earned by legitimate honey producers, packers, and wholesalers. Defendants knew, and intentionally so acted, that their above-described wrongful actions were fraudulent, misleading and unlawful, and would unlawfully and negatively impact the United States honey market to the financial detriment of Plaintiffs and Class Members. Defendants knowingly and intentionally engaged in their scheme to defraud for the purpose of taking unlawful and unfair advantage of Plaintiffs and Class Members. Defendants' knowing and intentional wrongful acts directly and proximately caused Plaintiffs and Class Members to suffer financial harm in their businesses and/or property.

7.      At all relevant times, Defendants' wrongful actions were committed knowingly, intentionally, with the intent to defraud, injure, and damage Plaintiffs and Class Members, and with reckless disregard of the rights and interests of Plaintiffs and Class Members.

8.      In addition to violating the RICO statute, Defendants' wrongful actions constitute common law negligent misrepresentation and have resulted in their unjust enrichment.

9.      Plaintiffs, on behalf of themselves and Class Members, seek to recover from Defendants their actual, consequential and incidental damages, punitive damages, RICO treble damages, equitable relief in the form of disgorged gross revenues, injunctive relief to return the market to free competition, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs, and such other relief, as the Court may find just and appropriate.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiffs' claims under:  (i) 18 U.S.C. § 1961, *et seq.,* under 18 U.S.C. § 1964(a), (c) (RICO); (ii) 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the Parties are

citizens of different states and/or foreign states (diversity); (iii) 28 U.S.C. § 1332(d) (CAFA), because (a) there are 100 or more Class Members, (b) at least one Class Member is a citizen of a state that is diverse from the citizenship of at least one of Defendants, and (c) the matter in controversy exceeds $5,000,000 USD exclusive of interest and costs; and (iv) 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has *in personam* jurisdiction over Defendants because at all relevant times, they resided, were found, had agents, directly and indirectly conducted business, committed the wrongful acts made the basis of this suit and/or were prosecuted by the Government in the Eastern Division of the Northern District of Illinois. Defendant Honey Solutions entered into a Deferred Prosecution Agreement for its wrongful acts, which constitute a portion of the basis of this suit, in the Eastern Division of the Northern District of Illinois.

11.     At all relevant times, Defendants resided, were found, had agents, directly and indirectly conducted business, committed the wrongful actions made the basis of this suit and/or were prosecuted by the Government in the Eastern Division of the Northern District of Illinois. Defendant Honey Solutions Farms entered into a Deferred Prosecution Agreement for its wrongful actions, which constitute a portion of the basis of this suit, in the Eastern Division of the Northern District of Illinois. A substantial part of Defendants' wrongful acts occurred in the Eastern Division of the Northern District of Illinois. Accordingly, venue is proper in the Eastern Division of the Northern District of Illinois pursuant to 28 U.S.C § 1391(a) and 18 U.S.C § 1965.

### PARTIES

#### PLAINTIFFS

12.     Plaintiff Chris Moore d/b/a Moore's Honey Farm, at all relevant times, was a honey producer and packer with its principal place of business in Houston, Texas, and, as of 2008, Kountze, Texas. During the relevant time period, Moore's Honey Farm regularly

transported its honey bees to pollinate certain crops, including to California to pollinate the almond groves.

13.     Plaintiff Cox Honey of Utah, LLC, at all relevant times, was a honey producer and wholesaler with its principal place of business in Mendon, Utah. During the relevant time period, Cox Honey of Utah, LLC regularly transported its honey bees to pollinate certain crops, including to California to pollinate the almond groves.

14.     Plaintiff Brett Adee d/b/a Adee Honey Farms, at all relevant times, was a honey producer and wholesaler with its principal place of business in Bruce, South Dakota. During the relevant time period, Adee Honey Farms regularly transported its honey bees to pollinate certain crops, including to California to pollinate the almond groves.

15.     Plaintiff Kelvin Adee d/b/a Adee Honey Farms, at all relevant times, was a honey producer and wholesaler with its principal place of business in Bruce, South Dakota. During the relevant time period, Adee Honey Farms regularly transported its honey bees to pollinate certain crops, including to California to pollinate the almond groves.

DEFENDANTS

16.     Defendant Honey Holding I, Ltd. d/b/a Honey Solutions ("Honey Solutions") is a Texas limited partnership with its principal place of business in Baytown, Texas. At all relevant times, Honey Solutions purchased, received, processed, filtered, blended, packaged, marketed, sold, and distributed bulk honey—including illegally transshipped and illegally mis-declared honey—to retail, foodservice, and industrial customers in the United States. According to its website, www.honeysolutions.com, (last visited April 18, 2013), "Honey Solutions is one of the largest dedicated industrial honey suppliers in the United States," providing "over 20,000,000 pounds of industrial honey per year from coast to coast to America's most premier bakeries and

6

food processors." "Founded in 1940 as Hignite Packing Company, Honey [Solutions] is one of the largest processors of industrial honey in the United States. From its facility located on 6 acres outside Houston Texas, Honey [Solutions] provides honey coast to coast to most of America's recognized bakers and food processors." *Id.* On February 12, 2013, Honey Solutions entered into a Deferred Prosecution Agreement with the Government for the wrongful acts constituting a portion of the basis of this action and paid a $1 million USD fine. The Deferred Prosecution Agreement was entered by the Court on February 20, 2013. *See U.S. v. Honey Holding I, Ltd., d/b/a Honey Solutions,* No. 13 CR 138 (Feb. 20, 2013) (attached hereto as Exhibit A).

17.     Defendant HHI Management, LLC ("HHI") is a Texas limited liability company. At all relevant times, HHI was (and continues to be) the general partner of Defendant Honey Solutions. As the general partner of Honey Solutions, HHI engaged in and/or caused Honey Solutions to engage in the wrongful acts made the basis of this action and HHI, Murphy and Tran (and possibly others) profited as a result.

18.     Defendant Douglas A. Murphy ("Murphy") is a citizen and resident of Kingwood, Texas. From approximately 2003 to May 2008, Murphy was Director of Sales at Honey Solutions and responsible for the purchase of wholesale quantities of honey, maintaining relationships with wholesale honey suppliers, and the sale of honey to Honey Solutions in the United States. At all relevant times, Murphy was (and, on information and belief, continues to be) a principal and the managing member of Defendant HHI, the general partner of Honey Solutions, and, therefore, the managing partner of Honey Solutions. In this position, Murphy exercised control, authority, responsibility and/or supervision over Honey Solutions, including its operations and executive management team. Murphy also served as management's primary

point of contact with Honey Solutions' customers and the public regarding Honey Solutions' policies, positions and practices on food safety and illegally transshipped and illegally mis-declared honey. As a result of his wrongful acts, which constitute a portion of the basis of this action, Murphy was indicted by the Government. Murphy engaged in and/or caused Honey Solutions to engage in the wrongful acts made the basis of this action and personally profited as a result. On February 20, 2013, Murphy entered into a Plea Agreement with the Government in which he voluntarily pleaded guilty for the wrongful acts constituting a portion of the basis of this action. *See U.S. v. Douglas A. Murphy*, No. 13 CR 138, at 4 (Feb. 20, 2013) (attached hereto as Exhibit B).

19.     Defendant Urbain Tran ("Tran") is a citizen and resident of the State of California. Beginning at least as early as 2006, and at all relevant times, Tran was an agent of Honey Solutions with the primary responsibility of locating, arranging, and sourcing honey for Honey Solutions. At all relevant times, Tran brokered transactions in which Honey Solutions purchased Chinese-origin honey from at least seven shell and front companies that were controlled by Chinese honey producers and manufacturers, including AHCOF USA Inc., Bo Bay Corporation, Chengda Trading Ltd., Glory Spring Enterprise Co., Ltd., Pineco Import/Export Ltd., SilverSpoon International, Inc. and Sweet Campo Co., Ltd. ("Sweet Campo"). At all relevant times, Tran acted within the scope of his agency relationship on behalf of Honey Solutions, with the intent to benefit himself and Honey Solutions in the course of discharging his duties. Sweet Campo is a shell import company that falsely and fraudulently imported Chinese-origin honey into the United States without paying antidumping duties and at times, honey assessment fees, which Sweet Campo sold to Honey Solutions through transactions brokered by Tran. Between about 2007 and in or around June 2011, Tran, as part

of a fraudulent practice to enter and introduce, and cause others to enter and introduce, and attempt to enter and introduce, Chinese-origin honey into United States commerce in avoidance of antidumping duties and at times, honey assessment fees, arranged for Honey Solutions to purchase from these companies, hundreds of shipping containers of Chinese-origin honey valued at approximately $12,319,201 USD, even though Tran knew the honey was falsely and fraudulently imported, entered, marketed and sold as non-Chinese honey and at other times, as sugars and syrups, which caused losses to the United States of approximately $33,403,105.

20.     As part of the fraudulent practice, Tran obtained and caused others at Honey Solutions to receive fake and fraudulent bills of lading, invoices, packing lists, country of origin certificates and other papers, which Tran knew to be fake, to falsely and fraudulently declare Chinese-origin honey as having originated from countries other than China, including Cambodia, Malaysia, Mongolia, Russia and Vietnam, and at times, as sugars and syrups, and coordinated with freight forwarding companies to cause hundreds of shipping containers of fraudulently entered Chinese-origin honey to be delivered to Honey Solutions.  As part of the fraudulent practice, between about 2009 and 2012, Tran accepted approximately $330,941 in undisclosed payments from Chinese honey producers and manufacturers in exchange for brokering transactions with their companies while knowing these producers and manufacturers were illegally trans-shipping and illegally mis-declaring Chinese-origin honey purchased by Honey Solutions. As part of the fraudulent practice, Tran communicated by email and telephone with others, including in the Northern District of Illinois, in furtherance of Honey Solutions purchasing and receiving illegally mis-declared Chinese-origin honey that avoided antidumping duties and honey assessment fees.  As such, Tran engaged in and/or caused Honey Solutions to engage in the wrongful acts made the basis of this action and personally profited as a result. On

February 26, 2013, Tran entered into a Plea Agreement with the Government in which he voluntarily pleaded guilty for the wrongful acts constituting a portion of the basis of this action. *See U.S. v. Urbain Tran*, 13 CR 1040], at 2-6 (Feb. 26, 13) (attached hereto as Exhibit C).

21.     Defendants Murphy and Tran together are sometimes referred to herein as the "Honey Solutions Executives."

## FACTS

22.     At all relevant times, since as early as 2000, Defendants have participated in a worldwide conspiracy to deceive Government import authorities about the origin of honey produced in China, avoid paying the corresponding antidumping duties on the Chinese honey, defraud the United States honey market and substantially injure Plaintiffs and Class Members—legitimate domestic honey producers and packers—in their businesses and property.

23.     In furtherance of their conspiracy, Defendants and their co-conspirators (i) caused honey originating in China (and possibly other unlawful sources), including honey containing adulterated antibiotics, to be illegally transshipped through intermediate countries (including, *inter alia*, Cambodia, Malaysia, Mongolia, Russian, and Vietnam) to the United States, (ii) falsely represented to Government import authorities or caused others to falsely represent to Government import authorities that the Chinese honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups, and (iii) marketed, sold, and distributed fraudulently declared Chinese-origin honey to businesses and persons throughout the United States—to the financial detriment of Plaintiffs and Class Members.

24.     Defendants' conspiracy and wrongful acts inflicted severe economic hardship on Plaintiffs and Class Members that are legitimate domestic honey producers and packers.  The

illegal transshipment and importation of fraudulently declared Chinese-origin honey directly and/or proximately caused widely divergent market prices for honey during the relevant period— one price for legitimate honey and another "rock bottom" price for the illegally transshipped and fraudulently declared Chinese-origin honey. *See Enforcing America's Trade Laws in the Face of Customs Fraud and Duty Evasion: Hearing Before the S. Comm. on Finance, Subcommittee on Int'l Trade, Customs, and Global Competitiveness*, 112th Cong. 2 (May 5, 2011) (statement of American Honey Producers Association).

25.     According to the United States Department of Agriculture ("USDA"), in 2010, for example, the average price of all honey sold in the United States was $1.45 per pound. *Id*. at 4. At the same time, illegally transshipped and fraudulently declared Chinese-origin honey was offered for sale at prices as low as $.75 per pound—prices that would not be possible without evading payment of applicable antidumping duties. *Id.* "This fraudulent and illicit trade [made] it almost impossible for honey packers who refuse to purchase transshipped product to compete against those who are engaged in this activity." *Id.*

26.     The American Honey Producers Association summarized the extent of Defendants' fraudulent and unlawful acts and practices as follows:

> In 2008, 2009, and 2010, at least 80 million pounds of Chinese-origin honey entered the United States each year without paying the anti-dumping duty. That is the equivalent of 35% of all United States honey imports in 2008 and 44% of all honey imported in 2009. In sum, duties of $300 million otherwise owed to the U.S. Treasury have not been collected. This, or course, does not account for the millions in economic harm done to the domestic industry over the same three-year period. When added together, the numbers are staggering for a relatively small sector of the economy.

*Id.*

### THE DOMESTIC HONEY INDUSTRY

27.    Honey is most commonly used as a functional sweetener and appears in a variety of products, such as baked goods, cereal, condiments, candy, medicine and shampoo. Honey also contains mild antiseptic properties when used on the skin.

28.    From 2006 to 2011, the United States, on average, imported approximately 405 million pounds of honey per year. *See* USITC, *Honey from China*, Investigation No. 731-TA-893 (Second Review), at I-23 (Nov. 2012) (Publ. 4364). As of August 2011, United States honey producers supplied approximately 48% of the domestic honey demand; the remaining 52% is imported from foreign countries. Andrew Schneider, *Asian Honey, Banned in Europe, Is Flooding U.S .Grocery Shelves*, FOOD POLITICS, at 2 (August 15, 2011).

29.    Honey is produced in beehives by colonies of honeybees.  Honey production begins by honeybees gathering nectar from various plants.  Honeybees may forage several miles from their hives to find nectar and each bee may make several trips for nectar per day.  Upon returning to the hive, bees regurgitate the nectar into the mouths of specialized house bees, which add enzymes and regurgitate the mixture (unripe honey) into the hexagonal cells of the comb. The hexagonal cells containing the unripe honey are capped with a thin layer of wax and the honey is allowed to ripen.

30.    The United States domestic honey industry consists of producers of both raw and processed honey, including beekeepers that produce and/or wholesale raw honey and packers that gather, consolidate, process and pack both raw and processed honey for sale to industrial users and consumers.

31.     Beekeepers maintain bee colonies and extract honey from their hives.  Beekeepers in the United States are often migratory, moving their hives as needed to areas in need of pollination services and/or rich in certain flora to promote production of a distinct type of honey.

32.     Beekeepers use smoke, low pressure air and/or chemicals to harvest honey from beehives.  The raw, unprocessed honey is then (i) placed in large drums and transported to large independent packers for further processing, (ii) processed by small beekeeper packers and bottled for local sale, or (iii) left in its raw form and bottled by the beekeeper for local sale.

33.     Large independent honey packers purchase honey from multiple sources and process and pack the honey for resale in the regional or national markets.  Small beekeepers/packers extract honey from their own beehives and typically process and pack the honey for resale in a local market.

34.     The domestic honey industry is a critical component of agriculture in the United States.  One industry leader recently explained that bee pollination is "critical in the production of more than 90 food, fiber and seed crops, and directly results in approximately $20 billion in U.S. farm output." *Enforcing America's Trade Laws in the Face of Customs Fraud and Duty Evasion: Hearing Before the S. Comm. on Finance, Subcommittee on Int'l Trade, Customs, and Global Competitiveness*, 112th Cong. 2 (May 5, 2011) (statement of American Honey Producers Association).

### THE REGULATION OF GOODS IMPORTED INTO THE UNITED STATES

35.     The Bureau of Customs and Border Protection ("CBP") of the United States Department of Homeland Security is responsible for (i) examining goods entering the United States to ensure they are admissible under, and in compliance with, United States laws, and (ii) assessing and collecting taxes, fees and duties on imported goods, including antidumping duties.

36.     In order to facilitate the entry of goods into the United States, importers commonly work with customs house brokers, which file entry documents with the CBP based on information provided by the importers.

37.     CBP Entry Forms 3461 (Entry/Immediate Delivery) and 7501 (Entry Summary) require importers to provide specific and truthful information pertaining to imported goods, including a description of the goods and their harmonized tariff code, manufacturer, value and country of origin.

38.     Goods are "transshipped" when shipped from their country of origin to a country of intermediate destination, then shipped to the United States, and fraudulently declared to Government import authorities as originating in a country other than their true country of origin. Thus, for example, Chinese-origin honey shipped to an intermediate destination country (such as India, Thailand, Malaysia, and/or the Philippines), then shipped to the United States, and fraudulently declared as originating in a country other than China is illegally "transshipped."

39.     On the other hand, Chinese-origin honey imported into the United States and declared to be a product other than honey, such as molasses, fructose, rice syrup, glucose syrup, honey syrup and apple juice concentrate (collectively "sugars and syrups") is fraudulently mis-declared Chinese-origin honey.

40.     The United States Food and Drug Administration enforces the provisions of the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, to ensure that foods, including imported goods, are safe, sanitary, and properly labeled.

41.     The FDCA prohibits the delivery or introduction and/or causing the delivery or introduction of adulterated food.   Food containing unsafe food additives—including the

antibiotics Ciprofloxacin, Norfloxacin, and Chloramphenico—is considered adulterated under the FDCA.

### ANTIDUMPING ORDER IMPOSED BY THE UNITED STATES DEPARTMENT OF COMMERCE ON CHINESE-ORIGIN HONEY

42.     Dumping occurs when imported goods are sold in the United States at less than fair value; dumping is generally considered to be an unfair trade practice.

43.     Antidumping duties are intended to counter international price discrimination that injures United States industries by dumping goods, thereby promoting fair competition between United States industries and foreign industries.

44.     An antidumping duty order is a formal determination issued by the United States Department of Commerce requiring a duty to be collected on imports of a particular product from specified countries.  United States industries may petition the Department of Commerce and the United States International Trade Commission ("USITC") for relief from imports that are "dumped" and sold at less than fair value in the United States.  The Department of Commerce and USITC are responsible for conducting antidumping investigations.

45.     When a petition is filed requesting relief from imports being "dumped" and sold at less than fair value in the United States, the Department of Commerce is responsible for determining whether the alleged dumping, in fact, occurred and, if so, the margin of such dumping.  The USITC, on the other hand, is responsible for determining whether a United States industry was materially injured or threatened with material injury by reason of the imports under investigation.  When both the Department of Commerce and USITC reach affirmative final determinations on these questions, the Department of Commerce issues an antidumping duty order establishing the antidumping duty to be paid on the dumped foreign product.

46.     In September 2000, the American Honey Producers Association ("AHPA"), the principal trade association of domestic honey producers, and the Sioux Honey Association ("SHA"), a non-profit cooperative marketing organization that collects, processes, packs, and markets honey products, filed a petition with the Department of Commerce and USITC, alleging that the honey industry in the United States was materially injured and threatened with further material injury by the importation, dumping, and sale of Chinese-origin honey.

47.     In September 2001, the Department of Commerce concluded that Chinese-origin honey[1] was being sold, or likely to be sold, into the United States at less than fair value, in contravention of § 735(a) of the Tariff Act of 1930.  In November 2001, the USITC found that the domestic honey industry was materially injured by the importation of Chinese-origin honey sold in the United States at less than fair value. The Department of Commerce issued an antidumping duty order on December 10, 2001.

48.     In June 2007, the USITC conducted an expedited five-year review of the antidumping order on Chinese-origin honey. The USITC determined that revocation of the order would likely lead to the continuation or recurrence of material injury to the domestic honey industry within the reasonably foreseeable future. USITC, *Honey from Argentina and China*, Investigation Nos. 701-TA-402 and 731-TA-892 and 893, p. 3 (June 2007) (Publ. 3929).  In November 2012, the USITC conducted its second five-year review and reached the same

---

[1] The Department of Commerce defined the types of Chinese-origin honey products subject to the antidumping duties as follows:

> The products covered by the order are natural honey, artificial honey containing more than 50 percent natural honey by weight, preparations of natural honey containing more than 50 percent natural honey by weight, and flavored honey. The subject merchandise includes all grades an colors of honey whether in liquid, creamed, comb, cut comb, or chunk form, and whether packaged in retail or bulk forms.

USITC, Honey from China, Investigation No. 731-TA-893 (Second Review), p. I-8 (Nov. 2012) (Publ. 4364).

conclusion. USITC, *Honey from China*, Investigation No. 731-TA-893 (Second Review), p. 3 (Nov. 2012) (Publ. 4364).

49.     Between December 10, 2001 and October 2005, the default antidumping duty on Chinese-origin honey was approximately 183%. From June 2006 to mid-July 2007, the default rate changed to approximately 212%. From mid-July 2007 to mid-July 2008, the default rate was approximately 221%.

50.     Since July 2008, antidumping duties on Chinese-origin honey are assessed against the entered net weight of the imported honey, first at $2.06 per net kilogram and later, from January 2009 to the present, at $2.63 per net kilogram. There also is a "honey assessment fee" of one cent per pound.

## DEFENDANTS' WRONGFUL ACTS

51.     At all relevant times, Honey Solutions, acting by and through its officers, directors, employees, shareholders and/or agents, including the Honey Solutions Executives and HHI (and possibly others), knowingly, intentionally, and repeatedly conspired with each other and others to purchase, receive, process, filter, blend, package, market, sell and distribute illegally trans-shipped and illegally mis-declared honey to retail, foodservice and industrial customers in the United States. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

52.     At all relevant times, Defendants knowingly, intentionally, and repeatedly worked with each other and others to facilitate the marketing, transportation, sale, and distribution of

17

Chinese-origin honey throughout the United States that was fraudulently declared to Government import authorities, via the mails and/or interstate and/or foreign wires, as originating in countries other than China. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

53.     At all relevant times, Defendants knowingly, intentionally, and repeatedly conspired to (and did) purchase, receive, market, transport, sell, and distribute Chinese-origin honey throughout the United States that was repeatedly and fraudulently declared to Government import authorities, via the mails and/or interstate and/or foreign wires, as originating in countries other than China and/or to be a product other than honey, including sugars and syrups. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

54.     At all relevant times, Defendants knowingly, intentionally, and repeatedly falsely represented to United States import authorities, Honey Solutions' customers and the general public that its honey complied with applicable laws and that it conducted supply chain audits and inspections of manufacturers and suppliers to ensure its compliance. These representations were false, deceptive, and misleading. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well

as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

55. At all relevant times, Defendants knowingly, intentionally, and repeatedly purchased honey from United States honey brokers who received honey from certain Asian suppliers—even after supply chain audits and inspections revealed that its Asian suppliers were trafficking illegally transshipped Chinese-origin honey that had been fraudulently declared to United States import authorities as having originated in countries other than China and even after being denied access to at least one Asian suppliers facilities to conduct an inspection and audit. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

56. At all relevant times, Defendants knowingly, intentionally, and repeatedly conspired to (and did) obtain and receive, and cause others to obtain and receive, fake and fraudulent bills of lading, invoices, packing lists, country or origin certificates, and other related papers used to fraudulently declare to United States import authorities that Chinese-origin honey had originated in countries other than China. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

57.     At all relevant times, Defendants knowingly, intentionally, and repeatedly conspired to (and did) obtain and receive, fake and fraudulent bills of lading, invoices, packing lists, country or origin certificates, and other related papers, used to fraudulently declare to United States import authorities that Chinese-origin honey were goods other than honey, including sugars and syrups. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, to the exclusion of Plaintiffs and Class Members, and control, and await discovery.

58.     At all relevant times, Defendants knowingly, intentionally, and repeatedly misled its customers and the general public regarding its purchasing, receiving, processing, and mislabeling of Chinese-origin honey that was fraudulently declared as to country of origin upon importation into the United States. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

59.     At all relevant times, Defendants knowingly, intentionally, and repeatedly maintained the Honey Solutions corporate website containing false, deceptive, and misleading representations that Honey Solutions was not involved in the illegal trans-shipment of Chinese-origin honey and/or defrauding United States import authorities regarding the origin of Chinese-origin honey upon importation into the United States. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign

wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

60.     At all relevant times, Defendants knowingly, intentionally, and repeatedly misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the above-described wrongful acts and practices, and the purposes of the acts and practices committed in furtherance of their unlawful activities.  The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.

61.     As a direct and/or proximate result of Defendants' above-described wrongful acts, on February 20, 2013, the Honorable Elaine E. Bucklo, United States District Court for the Northern District of Illinois, entered a two-year Deferred Prosecution Agreement between the United States and Honey Solutions, wherein Honey Solutions:

(i)     accepted and acknowledged responsibility for its wrongful conduct and the wrongful conduct of its current and former employees and agents;

(ii)    admitted that at least from January 1, 2003 to around January, 1, 2012, it participated in the above-described conspiracy to import, dump and sell fraudulently declared Chinese-origin honey to its United States customers in such amounts that "caused losses to the United States of approximately $33,403,125."

(iii)   agreed to cooperate with United States law enforcement officials regarding the Government's ongoing investigation of the illegal importation of fraudulently declared Chinese-origin honey into the United States;

(iv)    agreed to pay a $1,000,000 USD fine; and

(v)     agreed to institute a corporate compliance program.

*See U.S. v. Honey Holding I, Ltd., d/b/a Honey Solutions,* No. 13 CR 138 (Feb. 20, 2013) (attached hereto as Exhibit A).

62.     As a direct and/or proximate result of Defendant Douglas Murphy's above-described wrongful acts, Murphy entered into a plea agreement with the Government, wherein Murphy admitted to knowingly purchasing honey that he knew to be adulterated with the antibiotic Chloramphenicol, rendering such honey adulterated and prohibited for sale in the United States, and to selling such adulterated honey to customers in the United States on behalf of Honey Solutions without disclosing its adulterated nature and by falsely representing that the honey did not contain a prohibited antibiotic. *See U.S. v. Douglas A. Murphy*, No. 13 CR 138, at 4 (Feb. 20, 2013) (attached hereto as Exhibit B).

63.     As a direct and/or proximate result of Defendant Urbain Tran's above-described wrongful acts, Tran entered into a plea agreement with the Government, wherein Tran admitted that while acting within the scope of his agency relationship with Honey Solutions he knowingly facilitated and arranged for the purchase, distribution, and sale of Chinese-origin honey that he knew to have been falsely and fraudulently declared to Government import authorities as to country of origin upon entry and importation into the United States. *See U.S. v. Urbain Tran*, 13 CR 1040], at 2-6 (Feb. 26, 13) (attached hereto as Exhibit C).

## HONEY SOLUTIONS EXECUTIVES' AND HHI'S PATTERN OF UNLAWFUL ACTIVITY UNDER 18 U.S.C. § 1961, *et seq.*:  MAIL FRAUD AND/OR INTERSTATE AND/OR FOREIGN WIRE FRAUD

64.     The preceding factual statements and allegations are incorporated by reference.

65.     The Honey Solutions Executives and HHI engaged in an open-ended scheme to (i) illegally transship honey and mis-declare honey originating in China (and possibly other unlawful source countries), including honey containing adulterated antibiotics, through

intermediate countries to the United States, (ii) defraud Government import authorities by misrepresenting that the Chinese-origin honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups so as to avoid paying antidumping duties, (iii) dump, market, sell, and distribute the illegally imported and fraudulently declared Chinese-origin honey throughout the United States, (iv) undercut and destroy their competition (*i.e.*, Plaintiffs and Class Members), and (v) substantially depress the price of honey legitimately produced, packed, marketed, and sold in the United States. This scheme was a consistent, regular, and dominant part of the manner in which the Honey Solutions executives and HHI participated in and conducted the day-to-day business affairs of Honey Solutions (the RICO enterprise) and would have continued but for the Government's intervention.

66. The Honey Solutions Executives and HHI devised, instigated, perpetrated, and executed the scheme by engaging in the above-described repeated and systematic mail fraud and/or interstate and/or foreign wire fraud, in violation of 18 U.S.C. §§1341; 1343, pursuant to which they repeatedly defrauded and/or conspired to defraud Government authorities by misrepresenting that the Chinese-origin honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups—to the financial benefit of themselves, Honey Solutions and possibly others and to the financial detriment of Plaintiffs and Class Members. Specifically, the Honey Solutions Executives and HHI, individually and/or on behalf of Honey Solutions (and possibly others) and/or their unnamed co-conspirators, used and/or caused Honey Solutions (the RICO enterprise) to use the USPS and/or private or commercial interstate carriers and/or interstate and/or foreign wires in interstate and/or foreign commerce to repeatedly and fraudulently to defraud Government import authorities by

23

misrepresenting, *inter alia*, that the Chinese-origin honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups. The dates and substance of Defendants' fraudulent communications to the Government via the mails and/or interstate and/or foreign wires, as well as the communications by and between themselves via the mails and/or interstate and/or foreign wires in furtherance of their fraudulent scheme, are in Defendants' possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery. By their unlawful actions, the Honey Solutions and HHI (i) conducted and/or participated in the affairs of Honey Solutions (the RICO enterprise) (in violation of 18 U.S.C. § 1962(c)) and/or (ii) conspired to violate 18 U.S.C. § 1962(c) (in violation of 18 U.S.C. §1962(d)), and defrauded the Government in the process.

67.    The Honey Solutions Executives and HHI caused Honey Solutions (the RICO enterprise) to engage in this fraudulent scheme with the intent, *inter alia*, to defraud Government import authorities, dump, market, sell and distribute the illegally imported and fraudulently declared Chinese-origin honey throughout the United States, undercut, damage, and destroy their competition (Plaintiffs and Class Members), substantially depress the price of honey legitimately produced, packed, marketed, and sold in the United States, and reap the financial benefits for themselves (and possibly others) to the financial detriment of Plaintiffs and Class Members. The Honey Solutions Executives' and HHI's wrongful actions and fraudulent scheme—which would have continued but for the Government's intervention—constitutes mail fraud and/or interstate and/or foreign wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

68.    The Honey Solutions Executives' and HHI's multiple, repeated and continuous acts of mail fraud and/or interstate and/or foreign wire fraud set forth above constitute a pattern of unlawful activity pursuant to 18 U.S.C. § 1961(1); (5). Nothing in the nature of their above-

described scheme demonstrates that the scheme would ever have terminated but for the Government's intervention. Moreover, and independent of the duration of the scheme, the Honey Solutions Executives' and HHI's wrongful acts were a consistent, regular and dominant part of the manner in which they conducted and/or participated in the day-to-day business and financial affairs of Honey Solutions (the RICO enterprise).

## CLASS ACTION ALLEGATIONS

69.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action against Defendants as a national class action on behalf of themselves and all members of the following Class of all others similarly situated:

> All individuals and entities that produced, packed, sold and/or distributed honey in the United States, from January 1, 2000 to the present. Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, Defendants' officers, directors, employees, shareholders, agents and legal representatives, the Government, the Court and Court personnel.

70.     The Class Members are so numerous that their joinder is impracticable. On information and belief, there are hundreds, if not thousands, of Class Members geographically dispersed throughout the United States. The precise number and identities of the Class Members are currently unknown to Plaintiffs, but can easily be derived from the membership rolls of the various national and state honey producer/packer/wholesaler trade organizations.

71.     There are questions of law and fact common to the Class as a whole that predominate over any questions affecting only individual Class Members including, *inter alia*:

(i)      whether Defendants' above-described wrongful actions violated 18 U.S.C. § 1962(c) and/or (d);

(ii)     whether Defendants' above-described wrongful actions constitute negligent misrepresentation at common law;

(iii)    whether Defendants have been unjustly enriched by their above-described wrongful actions;

(iv)     whether Plaintiffs and Class Members sustained damages because of Defendants' above-described wrongful actions;

(v)      whether Plaintiffs and Class Members are entitled to recover actual damages, consequential damages, incidental damages, punitive damages and/or treble damages;

(vi)     whether Plaintiffs and Class Members are entitled to disgorgement of gross revenues and/or other equitable relief; and

(vii)    whether Plaintiffs and Class Members are entitled to injunctive relief.

**72.**    Plaintiffs' claims are typical of Class Members' claims because Plaintiffs, like all Class Members, are victims of Defendants' above-described wrongful actions; to wit, Defendants' illegal importation, fraudulent mis-declaration and distribution of Chinese-origin honey wrongfully dumped on the United States honey market.

**73.**    Plaintiffs and their counsel will fairly and adequately represent the interests of Class Members. Plaintiffs have no interests antagonistic to, or in conflict with, any of the Class Members' interests. Plaintiffs' lawyers are highly experienced in prosecuting class actions and complex commercial litigation, including successful cases asserting RICO violations.

**74.**    A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and Class Members' claims. Plaintiffs and Class Members have been irreparably harmed as a result of Defendants' above-described wrongful actions. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Class Members to intervene as parties-plaintiff in this action, (iii) it will allow numerous individuals and entities with claims too small to adjudicate on an individual basis because of prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Defendants' liability is adjudicated.

75.     Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

76.     Certification of the Class also is appropriate under FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or equitable relief with respect to the Class as a whole.

77.     Certification of the Class also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendants.  For example, one court might decide that the challenged actions are illegal and enjoin Defendants, while another court might decide that the same actions and/or inaction are not illegal.  Individual actions also could be dispositive of the interests of the other Class Members who were not parties to such actions and substantially impair or impede their ability to protect their interests.

78.     Defendants' wrongful actions are generally applicable to the Class as a whole, for which Plaintiffs seek, *inter alia*, damages and equitable remedies.

79.     Absent a class action, Defendants will retain the benefits of their wrongdoing despite their serious violations of the law and infliction of harm on Plaintiffs' and Class Members' businesses and property.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

### VIOLATIONS OF 18 U.S.C. § 1962(c)

### (AGAINST THE HONEY SOLUTIONS EXECUTIVES AND HHI)

80.     The preceding factual statements and allegations are incorporated by reference.

81.     Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

82.     The Honey Solutions Executives and HHI are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

83.     Honey Solutions is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, was engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

84.     The Honey Solutions Executives and HHI conducted and/or participated in the business and financial affairs of Honey Solutions (the RICO enterprise) through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), 1962(c)—to wit, the above-described multiple, repeated, and continuous acts of mail fraud and/or interstate and/or foreign wire fraud in violation of 18 U.S.C. §§ 2, 1341, 1343.

85.     The Honey Solutions Executives' and HHI's pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(c) proximately and/or directly caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) by the Honey Solutions Executives' and HHI's (i) illegal importation and fraudulent

false declaration of Chinese-origin honey wrongfully dumped on the United States honey market that substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United States, and (ii) the earnings and profits Plaintiffs and Class Members would have earned on the sales of their honey but for the Honey Solutions Executives' and HHI's above-described wrongful acts. The Honey Solutions Executives and HHI committed these substantive RICO offenses by using Honey Solutions (the RICO enterprise) to engage in multiple predicate acts of mail fraud and/or interstate and/or foreign wire fraud to illegally import and fraudulently falsely declare Chinese-origin honey, wrongfully dump the Chinese-origin honey on the United States honey market, and substantially depress the price of honey legitimately produced, packed, marketed and sold in the United States—for the financial benefit of themselves and Honey Solutions (and possibly others) and the financial detriment of Plaintiffs and Class Members.

86.     The Honey Solutions Executives and HHI knew their tactics, misrepresentations and unlawful actions were fraudulent, misleading, and illegal, and would cause Plaintiffs and Class Members to suffer damages in the form of, *inter alia*, business destruction, lost profits, lost business opportunities, and Honey Solutions' gross revenues from sales of the above-described illegally imported, fraudulently declared, and wrongfully dumped Chinese-origin honey—all of which should be disgorged.  All of Plaintiffs' and Class Members' damages were reasonably foreseeable by the Honey Solutions Executives and HHI and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

## COUNT II

### VIOLATION OF 18 U.S.C. § 1962(d) BY
### CONSPIRING TO VIOLATE 18 U.S.C. § 1962(a)

### (AGAINST ALL DEFENDANTS)

**87.** The preceding factual statements and allegations are incorporated by reference.

**88.** Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

**89.** Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

**90.** Honey Solutions is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, was engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

**91.** Defendants conspired with other persons and/or each other within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a); that is, Defendants conspired to receive income (*i.e.*, revenues from their sales of illegally imported and fraudulently declared Chinese-origin honey wrongfully dumped on the United States honey market) derived, directly or indirectly, from the following pattern of unlawful activity in which they participated as principals within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(a)—to wit, the above-described multiple, repeated, and continuous instances of mail fraud and/or interstate and/or foreign wire fraud (as described above) in violation of 18 U.S.C. §§ 2, 1341, 1343. Defendants used or invested (and continue to use or invest), directly or indirectly, such income, or the proceeds of such income, in the operation of one or more RICO enterprises, which are engaged in, or the activities of which affect, interstate and/or foreign commerce.

92.     Defendants' pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(d) proximately and/or directly caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) by Defendants' (i) illegal importation and fraudulent declaration of Chinese-origin honey wrongfully dumped on the United States honey market that substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United States, and (ii) the earnings and profits Plaintiffs and Class Members would have earned on the sales of their honey but for Defendants' above-described wrongful acts.  Defendants committed these substantive RICO offenses by using Honey Solutions (the RICO enterprise) to engage in multiple predicate acts of mail fraud and/or interstate and/or foreign wire fraud to illegally import and fraudulently mis-declare Chinese-origin honey, wrongfully dump the Chinese-origin honey on the United States honey market, and substantially depress the price of honey legitimately produced, packed, marketed, and sold in the United States—for the financial benefit of themselves (and possibly others) and to the financial detriment of Plaintiffs and Class Members.

93.     Defendants knew their tactics, misrepresentations, and unlawful actions were fraudulent, misleading, and illegal, and would cause Plaintiffs and Class Members to suffer damages in the form of, *inter alia*, business destruction, lost profits, lost business opportunities, and Honey Solutions' gross revenues from sales of the above-described illegally imported, fraudulently declared, and wrongfully dumped Chinese-origin honey—all of which should be disgorged.  All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Defendants and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

31

## COUNT III

## VIOLATION OF 18 U.S.C. § 1962(d) BY
## CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)

### (AGAINST THE HONEY SOLUTIONS EXECUTIVES AND HHI)

94.     The preceding factual statements and allegations are incorporated by reference.

95.     Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

96.     The Honey Solutions Executives and HHI are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

97.     Honey Solutions is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, was engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

98.     The Honey Solutions Executives and HHI conspired with other persons and/or each other within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c)); that is, the Honey Solutions Executives and HHI conspired to conduct and/or participate in the business and financial affairs of Honey Solutions (the RICO enterprise) through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(c)—to wit, the above multiple, repeated, and continuous acts of mail fraud and/or interstate and/or foreign wire fraud in violation of 18 U.S.C. §§ 2; 1341; 1343.

99.     The Honey Solutions Executives' and HHI's pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(d) proximately and/or directly caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be

32

damaged) by the Honey Solutions Executives' and HHI's (i) illegal importation and fraudulent declaration of Chinese-origin honey wrongfully dumped on the United States honey market that substantially depressed the price of honey legitimately produced, packed, marketed, and sold in the United States, and (ii) the earnings and profits Plaintiffs and Class Members would have earned on the sales of their honey but for the Honey Solutions Executives' and HHI's above-described wrongful acts. The Honey Solutions Executives and HHI committed these substantive RICO offenses by using Honey Solutions (the RICO enterprise) to engage in multiple predicate acts of mail fraud and/or interstate and/or foreign wire fraud to illegally import and fraudulently mis-declare Chinese-origin honey, wrongfully dump the Chinese-origin honey on the United States honey market, and substantially depress the price of honey legitimately produced, packed, marketed, and sold in the United States—for the financial benefit of themselves and Honey Solutions (and possibly others) and to the financial detriment of Plaintiffs and Class Members.

100. The Honey Solutions Executives and HHI knew their tactics, misrepresentations and unlawful actions were fraudulent, misleading, and illegal, and would cause Plaintiffs and Class Members to suffer damages in the form of, *inter alia*, business destruction, lost profits, lost business opportunities, and Honey Solutions' gross revenues from sales of the above-described illegally imported, fraudulently declared, and wrongfully dumped Chinese-origin honey—all of which should be disgorged. All of Plaintiffs' and Class Members' damages were reasonably foreseeable by the Honey Solutions Executives and HHI and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

## (AGAINST ALL DEFENDANTS)

**101.** The preceding factual statements and allegations are incorporated by reference.

**102.** Defendants uniformly and negligently misrepresented their above-described wrongful acts in order to (i) cause honey originating in China, including honey containing adulterated antibiotics, to be illegally transshipped through intermediate countries to the United States, (ii) mislead Government import authorities that the Chinese-origin honey (a) originated in countries other than China and/or (b) was not honey, but other products, including sugars and syrups, so as to avoid paying antidumping duties, (iii) dump, market, sell, and distribute the illegally imported and intentionally fraudulently declared Chinese-origin honey to businesses and persons throughout the United States, and (iv) undercut and financially harm their competition (*i.e.*, Plaintiffs and Class Members) in the process.

**103.** Defendants had a duty to disclose to Government import authorities that, *inter alia*, they were importing Chinese-origin honey and pay the corresponding antidumping duties. Defendants' failure to do so constitutes negligent misrepresentation at common law.

## COUNT V

## UNJUST ENRICHMENT

## (AGAINST ALL DEFENDANTS)

**104.** The preceding factual statements and allegations are incorporated by reference.

**105.** This Count is brought under the unjust enrichment laws of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, D.C., Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New

Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, and Washington (collectively, the "Unjust Enrichment Jurisdictions"), on behalf of all individuals and entities that produced, packed, sold and/or distributed honey in Unjust Enrichment Jurisdictions, from January 1, 2000 to the present. Excluded from this Unjust Enrichment Sub-Class are Defendants, any entity in which any Defendant has a controlling interest, Defendants' officers, directors, employees, shareholders, agents and legal representatives, the Government, the Court, and Court personnel.

106.    Defendants (and possibly other persons and entities, including Defendants' current or former officers, directors, employees, shareholders, agents, and/or representatives, the identities of whom are known only to Defendants at this time) have been (and continue to be) unjustly enriched by, *inter alia*, (i) the above-described illegally imported, fraudulently declared, and wrongfully dumped Chinese-origin honey on the United States honey market, (ii) using and/or investing the fraudulently obtained revenues and profits in connection with other enterprises, and (iii) generating a return on the amounts described in (i) and (ii). Accordingly, Plaintiffs, on behalf of themselves and Class Members, seek to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' current or former officers, directors, employees, shareholders, agents, and/or representatives) have been (and continue to be) unjustly enriched.

## TOLLING OF THE STATUTES OF LIMITATION

107.    The preceding factual statements and allegations are incorporated by reference.

108.    FRAUDULENT CONCEALMENT.    Defendants took active steps to conceal the fact that they wrongfully, improperly, illegally, and repeatedly imported and fraudulently declared Chinese-origin honey, and then wrongfully dumped the Chinese-origin honey on the United

States honey market without paying antidumping duties. The details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await further discovery. When this material information was first revealed to Plaintiffs during February 2013—when Honey Solutions entered into the Deferred Prosecution Agreement with the United States Attorney's Office for the Northern District of Illinois that was filed with the Court and became a matter of public record—Plaintiffs exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Defendants fraudulently concealed their above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation (if any) are tolled.

109. **EQUITABLE ESTOPPEL.** Defendants took active steps to conceal the fact that they wrongfully, improperly, illegally, and repeatedly imported and fraudulently declared Chinese-origin honey, and then wrongfully dumped the Chinese-origin honey on the United States honey market without paying antidumping duties. The details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await further discovery. When this material information was first revealed to Plaintiffs during February 2013—when Honey Solutions entered into the Deferred Prosecution Agreement with the United States Attorney's Office for the Northern District of Illinois that was filed with the Court and became a matter of public record—Plaintiffs exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such be necessary, therefore, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable estoppel.

110.    EQUITABLE TOLLING.  Defendants took active steps to conceal the fact that they wrongfully, improperly, illegally, and repeatedly imported and fraudulently declared Chinese-origin honey, and then wrongfully dumped the Chinese-origin honey on the United States honey market without paying antidumping duties.  The details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, and await further discovery.  When this material information was first revealed to Plaintiffs during February 2013—when Honey Solutions entered into a Deferred Prosecution Agreement with the United States Attorney's Office for the Northern District of Illinois that was filed with the Court and became a matter of public record—Plaintiffs exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims.  Should such be necessary, therefore, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable tolling.

## RESPONDEAT SUPERIOR/AGENCY

111.    The preceding factual statements and allegations are incorporated by reference.

112.    Honey Solutions and HHI also are liable—under the doctrine of *respondeat superior* and/or agency theory—for the above-described wrongful acts committed by their current or former officers, directors, employees, agents, and/or representatives during the course and scope of their employment by, or representation of, Honey Solutions and HHI—to wit, such wrongful acts were committed (i) within their general authority, (ii) in furtherance of their business, and (iii) to accomplish the objective for which the officers, directors, employees, agents, and/or representatives were hired—all of which directly and/or proximately caused (and continue to cause) Plaintiffs and Class Members to suffer damages to their businesses and/or property to the financial benefit of Defendants.

## **RELIEF REQUESTED**

**113.** The preceding factual statements and allegations are incorporated by reference.

**114. ACTUAL, CONSEQUENTIAL, AND/OR INCIDENTAL DAMAGES.** As a direct and/or proximate result of Defendants' above wrongful acts, Plaintiffs and Class Members have sustained (and will continue to sustain) actual, consequential, and/or incidental damages in the form of, *inter alia*, business destruction, lost profits, lost business opportunities, and/or Defendants' gross revenues on the sales of the illegally imported and fraudulently declared Chinese-origin honey wrongfully dumped on the United States honey market—for which Plaintiffs and Class Members are entitled to compensation. Alternatively, Plaintiffs and Class Members are entitled to restitution and/or disgorgement of gross revenues. All of the damages sustained by Plaintiffs and Class Members were reasonably foreseeable by Defendants, for which they are jointly and severally liable. All conditions precedent to Plaintiffs' and Class Members' claims have been performed and/or occurred.

**115. PUNITIVE DAMAGES.** Defendants' wrongful acts were committed intentionally, willfully, wantonly, and/or with reckless disregard for Plaintiffs' and Class Members' rights and interests. Accordingly, Plaintiffs and Class Members are entitled to punitive damages from Defendants—both as punishment and to discourage such wrongful conduct in the future. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed or occurred.

**116. RICO TREBLE DAMAGES.** Plaintiffs and Class Members also are entitled to automatic treble damages for Defendants' above wrongful conduct in violation of the RICO statute under 18 U.S.C. § 1964(c).

117. **INJUNCTIVE RELIEF.** Defendants' illegal importation and fraudulent falsely-declared of Chinese-origin honey wrongfully dumped on the United States honey market without paying antidumping duties has caused (and will continue to cause) Plaintiffs and Class Members to suffer irreparable harm in the form of, *inter alia*, business destruction, lost profits, and/or lost business opportunities. Many Class Members were permanently driven out of business by Defendants' above-described wrongful acts. Such irreparable harm will not cease unless and until enjoined by this Court. Plaintiffs and Class Members, therefore, are entitled to a temporary injunction, permanent injunction, and/or other appropriate affirmative relief, including disgorgement of gross revenues, against Defendants' above-described wrongful acts. All conditions precedent to Plaintiffs' and Class Members' claims have been performed and/or occurred.

118. **ATTORNEYS' FEES, LITIGATION EXPENSES AND COURT COSTS.** Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses, and court costs under, *inter alia*, 18 U.S.C. § 1964(c). All conditions precedent to Plaintiffs' and Class Members' claims for attorneys' fees, litigation expenses, and court costs have been performed and/or occurred.

**<u>PRAYER</u>**

**WHERFORE,** Plaintiffs, for themselves and Class Members, respectfully request that (i) Defendants be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for themselves and Class Members, further request that Defendants be cited to appear and answer this lawsuit and, upon final trial or hearing, judgment be awarded against Defendants, jointly and severally, in favor of Plaintiff and Class Members, for:

    (a)      With respect to Counts I-III (violations of 18 U.S.C. § 1961, *et seq.*)--

        (i)      Threefold the actual and/or consequential damages sustained by Plaintiffs and Class Members along with costs of suit, attorneys' fees, litigation expenses, and court costs, all pursuant to 18 U.S.C. § 1964(c), together with pre- and post-judgment interest at the highest legal rates;

        (ii)     Equitable relief, as may be appropriate, pursuant to 18 U.S.C. § 1964(a), including an equitable accounting for all benefits, consideration, and gross revenues received, directly or indirectly, including the imposition of a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gross revenues; and

        (iii)    injunctive relief.

    (b)      With respect to Counts IV-V:

        (i)      actual, consequential, and/or incidental damages to be determined by the trier of fact;

        (ii)     punitive damages;

        (iii)    all amounts by which Defendants have been unjustly enriched;

        (iv)    an equitable accounting for all benefits, consideration, and gross revenues received, directly or indirectly, by any of the Defendants, including the imposition of a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gross revenues;

        (v)     injunctive relief (as set forth above);

        (vi)    pre- and post-judgment interest at the highest legal rates;

        (vii)   attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

        (viii)  costs of suit; and

        (ix)    such other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a trial by jury on all of their claims so triable.

Dated:   April 19, 2013                    Respectfully submitted,


                                           By: /s/ Ben Barnow

                                           Ben Barnow
                                           Sharon A. Harris
                                           Erich P. Schork
                                           Blake A. Strautins
                                           **BARNOW AND ASSOCIATES, P.C.**
                                           One N. LaSalle Street, Suite 4600
                                           Chicago, IL 60602
                                           Telephone: (312) 621-2000
                                           Facsimile: (312) 641-5504
                                           Email: b.barnow@barnowlaw.com
                                           Email: s.harris@barnowlaw.com
                                           Email: e.schork@barnowlaw.com
                                           Email: b.strautins@barnowlaw.com


                                           Richard L. Coffman
                                           **THE COFFMAN LAW FIRM**
                                           The First City Building
                                           505 Orleans St., Ste. 505
                                           Beaumont, TX 77701
                                           Telephone: (409) 833-7700
                                           Facsimile: (866) 835-8250
                                           Email:  rcoffman@coffmanlawfirm.com


                                           G. Robert Blakey
                                           Professor of Law Emeritus*
                                           Notre Dame Law School
                                           *Noted for purpose of identification
                                           7002 East San Miguel Avenue
                                           Paradise Valley, AZ 85253
                                           Telephone: (574) 514-8220
                                           Email: G.R.Blakey.1@nd.edu

                                           **ATTORNEYS FOR PLAINTIFFS**